873 F.2d 1451
 11 U.S.P.Q.2d 1319
 Unpublished Disposition
NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
In re AUTOMATED MARKETING SYSTEMS, INC.
 No. 88-1610.
 United States Court of Appeals, Federal Circuit.
 April 12, 1989.
 
 Before MARKEY, Chief Judge, FRIEDMAN, Circuit Judge, and EDWARD D. RE, Chief Judge.*
 RE, Chief Judge.
 
 DECISION
 
 1
 The decision of the Trademark Trial and Appeal Board, denying the registration of "SALES FOLLOW-UP" as a service mark by Automated Marketing Systems, Inc. ("AMS"), is affirmed.
 
 OPINION
 
 2
 AMS appeals from a decision of the Trademark Trial and Appeal Board which affirmed the Patent and Trademark Office Examining Attorney's refusal to register "SALES FOLLOW-UP" as a service mark for their business service of soliciting repeat and referral business for automobile dealerships.
 
 
 3
 The questions presented are whether the Trademark Trial and Appeal Board was clearly erroneous in finding that: 1) "SALES FOLLOW-UP" is the generic or common descriptive name for appellants services; and 2) in view of the highly descriptive nature of the phrase "SALES FOLLOW-UP", AMS' evidence was insufficient to prove distinctiveness through an acquired secondary meaning pursuant to Section 2(f) of the Lanham Trademark Act, 15 U.S.C. Sec. 1052(f) (1976).
 
 
 4
 Under the applicable clearly erroneous standard of review we conclude that the Board's findings, that "SALES FOLLOW-UP" is generic and that AMS' evidence was insufficient to prove distinctiveness through an acquired secondary meaning, were not clearly erroneous. Therefore, we affirm.
 
 
 5
 AMS offers to automobile dealerships a marketing strategies system designed to solicit post-sales repeat and referral business. Specifically, AMS performs data reduction and analysis on information collected through surveys and other marketing techniques applied to customer databases supplied by automobile dealerships. AMS digests the information for the members of the automobile dealership sales force to use in their sales follow-up efforts to generate repeat and referral sales.
 
 
 6
 On December 23, 1985, AMS filed an application to register "SALES FOLLOW-UP" as its service mark. In a preliminary amendment filed February 14, 1986, it submitted an affidavit of its president, John C. Bachman, which stated that it had used the mark continuously since 1956, and that he was aware of only one other party who used those words to identify a similar service. Mr. Bachman stated that the third party's use was for a brief period, and that after "exchanges of correspondence" the third party discontinued its use of "SALES FOLLOW-UP PROGRAM." AMS submits that the acquiescence of the third party, and a competitor's brochure, which lists AMS' services as "SALES FOLLOW-UP", are examples of recognition by competitors of "SALES FOLLOW-UP" as the service mark of AMS. AMS also submitted the affidavits of 27 automobile dealership customers which, in identical language, all state that they have never seen "SALES FOLLOW-UP" used by anyone other than AMS, and that they assume the mark refers to AMS.
 
 
 7
 The Examining Attorney refused to register "SALES FOLLOW-UP" pursuant to Section 2(e)(1) of the Lanham Trademark Act, 15 U.S.C. Sec. 1052(e)(1) (1976), which provides that a trademark shall be refused registration if it "[c]onsists of a mark which ... is merely descriptive [of the services]."
 
 
 8
 In response to appellant's claim of acquired distinctiveness under Section 2(f) of the Act, which provides that "nothing ... shall prevent the registration of a mark used by the applicant which has become distinctive of the applicant's [services]," the Examining Attorney found that the name was either generic, or so highly descriptive as not to qualify as a service mark. The Examining Attorney also rejected AMS' Section 2(f) claim finding that, even assuming the name to be capable of functioning as a mark, the evidence submitted was insufficient to demonstrate acquired distinctiveness.
 
 
 9
 In support of the finding as to the generic or highly descriptive nature of "SALES FOLLOW-UP", the Examining Attorney relied on: a) several examples found in the NEXIS data base, b) instances in which AMS used the phrase generically in its own sales brochure, and c) a dictionary definition of "Follow-Up" as a "system of pursuing an initial effort (as in advertising or in the activity of a salesman) by supplementary action."
 
 
 10
 In its affirmance, the Trademark Trial and Appeal Board concluded that the Examining Attorney met the Patent and Trademark Office's evidentiary burden of showing that "SALES FOLLOW-UP" is generic. In affirming, it stated that "the NEXIS excerpts, the dictionary definition, and the multiple references in [AMS'] own brochure in which 'follow-up' is used in conjunction with 'sales' ", also supported the finding of the Examining Attorney.
 
 
 11
 The Board also considered AMS' acquired distinctiveness claim, and agreed with the Examining Attorney that the highly descriptive nature of "SALES FOLLOW-UP" outweighed AMS' evidence of acquired distinctiveness. As indicated in the Board opinion, the findings of the Examining Attorney were fully considered by the Board, and the refusal to register AMS' "SALES FOLLOW-UP" was affirmed.
 
 
 12
 Since the findings of the Board were not clearly erroneous, and we agree with the evidentiary basis and reasons stated for the refusal to register "SALES FOLLOW-UP", we affirm.
 
 
 
 *
 The Honorable Edward D. Re, Chief Judge, United States Court of International Trade, sitting by designation pursuant to 28 U.S.C. Sec. 293(a) (Supp. IV 1986)